## Case No. 7,718.

KENTUCKY IMP. CO. v. SLACK.

[22 Int. Rev. Rec. 246.]

Circuit Court, D. Massachusetts. July, 1876.[1]

### TAXATION—RAILROAD COMPANY.

The Kentucky Improvement Company, and the Eastern Kentucky Railway Company as its successor, are liable to tax as a railroad company.

[See note at end of case.]

[This was a bill in equity by the Kentucky Improvement Company against Charles W. Slack, collector of internal revenue.]

This suit was brought, May 13, 1873, in the state court, after appeal duly made to the commissioner of internal revenue, to recover the amount of an internal revenue tax of seven hundred and fifty dollars, paid to the defendant, as collector of internal revenue for the Third Massachusetts internal revenue district, on the 24th May, 1870. It was duly removed to this court by certiorari, and was here heard upon agreed facts. The tax was a tax of five per cent. assessed upon coupons to the amount of $15,000 on bonds of the plaintiff corporation to the amount of $500,-000, dated August 15, 1866, and bearing interest at the rate of six per cent. per annum, payable semi-annually. The Kentucky Improvement Company (the plaintiff corporation) was originally organized under an act of the general assembly of the commonwealth of Kentucky, approved March 4, 1865, by the name of the "Argilite Mining and Manufacturing Company," which act provided as follows:

"Section 2. The objects and purposes of the incorporation of said company shall be the mining for coal, iron ore, petroleum, carbon or rock-oil, and any and all other minerals, or mineral substances, or the direct products of the earth, or any or all of them, and the transportation to market of the same. The location and field of mining and manufacture of said company shall be in Greenup, or any of its adjoining counties."

"Section 7. Said company shall have the power, and may, if they choose so to do, lock and dam Little Sandy river up to their mines and property; provided, for the condemnation of land and property for said purposes, the proceedings shall be had as is now provided by law for the condemnation of mill sites.

"Section 8. Said company shall have the power to take, acquire and hold such lands, mines and mining rights, as they may deem necessary for the uses of said company, and all such personal property, machinery, boats, flats, etc., as may be necessary, and to dispose of for the use of the company and the stockholders, any or all of the same."

[Acts Ky. 1865, vol. 2, p. 288.]

It was enacted by an act of the said general assembly, approved December 14, 1865, as follows:

"Section 1. That the name of the 'Argilite Mining and Manufacturing Company' is hereby changed, and said corporation shall be hereafter known and styled the 'Kentucky Improvement Company.'"

"Section 4. The said corporation is hereby authorized to construct one or more rail tracks from any lands owned or occupied by said corporation, to convenient points on the Ohio, or Little Sandy, river, or both, or to connect with other railways and to maintain said track, or tracks, and to draw cars over the same by suitable motive power. The company is hereby authorized to condemn and appropriate such lands and materials as may be necessary for the construction and convenient and proper use and maintenance of such railroads: provided, that for the condemnation of the lands and materials for such purposes, the same proceedings shall be had as are now required by law for the condemnation of lands and materials for turn-pikes and plank-roads; provided further, that the land condemned for any railroad track shall not exceed in width one hundred feet.

"Section 5. That in order to carry out to the fullest extent the objects and purposes of said act of incorporation, the said company is authorized to sell all minerals, mineral substances, products of the earth, and all other articles of commerce and manufacture lawfully possessed by them, and to buy and sell all such articles of merchandise as may be required to carry out the objects of their charter, and to establish agencies in any part of the United States for the prosecution of the traffic hereby authorized.

"Section 6. That should said company lock and dam the Little Sandy river, they shall build two bridges over said river sufficient for the public travel, one of the bridges to be at crossings of the Greenupsburg and Racoon Furnace road, and the other at the crossing of the Greenupsburg and Grayson road, at or near the Argilite Mills."

[Acts Ky. 1865–66, p. 3.]

The Kentucky Improvement Company was duly organized under the acts aforesaid, and commenced and continued operations thereunder until it ceased to exist, about March 1, 1870. At an adjourned meeting of the stockholders of said company, held on the 24th of July, 1866, it was resolved: 1st. "To authorize the building of a railroad, and to provide for locomotives, cars, and other facilities for the transportation of coal and other productions to market from the canal opening near Hunnewell Furnace to Hockaday's Landing on the Ohio river," 2d. "That a sum not exceeding $500,000 be raised for the purpose of building and equipping said railroad, and to afford facilities for transportation to market for the mineral and other productions of the company's property." 3d. "That the president and board of directors of this company be, and they hereby are, authorized and empowered to issue bonds to the amount of $500,000, secured by an indenture of mort-

gage on all their present landed property and improvements, bearing six per cent. interest, the interest payable semi-annually." In pursuance of the above vote an issue of bonds was made to the amount and bearing the interest named, and of the date of August 15, 1866, and was secured by a mortgage to trustees of even date of the then landed property and improvements of said company, and the coupons taxed in this case were a part of the coupons attached thereto. The whole issue was duly subscribed for and delivered to the subscribers. The road was finished and opened for the business of the company about the 1st of June, 1868. In addition to its own freight and its own officers and servants, the plaintiff company transported over its road from time to time for hire, other passengers and freight, the aggregate amount of receipts from which, for one year and eight months, are shown in the accompanying table; but there was no provision in its charter in its terms authorizing it to carry freight or passengers, other than its own. Another table appended gives the company's general business from April, 1866, to February 15, 1870. It is not known, and, for the purposes of this hearing, it is not claimed, that the plaintiff company during the period ending February 15, 1870, ever refused to carry for hire such passengers and freight other than its own, as offered.

By the tables referred to it appeared that from July, 1868, to Feb. 15, 1870, both inclusive, the receipts of the company from its iron freight were $29,709.80, and that its receipts from passengers and freight not of the company were: Passengers, $4,868.80; freight, $3,833.36. The company's sales of coal were as follows:

| | | | | | |
|---|---|---|---|---|---:|
| 1866, April 1, to Dec. 31 | | | | | $ 774 70 |
| 1867, Jan. 1, to | " | " | " | | 324 33 |
| 1868, | " | " | " | " | 25,576 82 |
| 1869, | " | " | " | " | 40,909 01 |
| 1870, | " | " | Feb. 15 | | 6,541 55 |

$74,126 42

And the company produced for its own use during the same period as follows:

| | | | |
|---|---:|---|---:|
| 1866 | 356.16 tons | 1869 | 792 tons |
| 1867 | 5433.55 " | 1870 | 60 " |
| 1868 | 2286.78 " | | |

Total ....................11,928.49 tons

And the company's sales of iron were:

| | | | | |
|---|---|---|---|---:|
| 1866, April 1, to Dec. 31 | | | | $ 95,846 46 |
| 1867, Jan. 1, to | " | | | 49,071 16 |
| 1868, | " | " | " | 161,735 46 |
| 1869, | " | " | " | 145,812 15 |
| 1870, | " | to Feb. 15 | | 18,204 13 |

$470,669 36

And the company's sales at its stores on the ground during same period amounted to $506,-529.75.

F. W. Palfrey, for plaintiff.

George P. Sanger, U. S. Atty., for defendant.

CLARK, District Judge. The question is whether the Kentucky Improvement Company was a railroad company so as to be liable to the tax imposed. At the hearing I was at first under the impression that it was not, and that the construction and use of its railroad was only incidental and subsidiary to its other objects, and designed to take the place of locking and damming the Little Sandy river, as provided in its first charter, under the name of the "Argilite Mining and Manufacturing Company." But upon further examination and reflection I am satisfied that such impression was not correct.

1st. Because the power to build a railroad, "or one or more rail-tracks, from any lands owned or improved by said corporation, to convenient points on the Ohio or Little Sandy river, or both, or to connect with other railways, and to maintain said tracks and draw cars over the same by suitable motive power," is a very much more extensive grant than the power to "lock and dam the Little Sandy" up to their mines and property. Under the amended charter a Briarean Railroad Company might have been built up. It might have netted the state of Kentucky all over with tracks, from the mouth of the Ohio to its source, and all along the Little Sandy, and to every other railroad in the state. and at any convenient point. It could build a road from any land owned or improved by it, to any of these points in any direction convenient, and condemn the lands taken by it. It is doubtful if any other charter of such extensive powers to a railroad company can any where be found.

2d. Because said company, after building their road, used it not only to convey their own products and manufactures, but as a public road for freight and passengers. It is true the amount thus received was not large, but the company accommodated "all comers." It is contended there was no provision in the charter in terms authorizing the company to convey freight or passengers other than its own. But the power to build a road must be construed as a power to use it, when built, in a legitimate way, for such are the object and purpose of building a road; and there is nothing in the charter restricting the road to carrying its own passengers and freight. Again, the company having carried freight and passengers other than their own, cannot now be heard to say they had no right to do so. They have by their acts put a construction upon the extent of their grant.

3d. Because it is not certain that the grant to build a railroad or railroads was in lieu of the power "to lock and dam the Little Sandy river," but was in addition to it. The amended charter provides "that should said company lock and dam the Little Sandy river they shall build two bridges," etc., showing pretty conclusively that both powers, to build a railroad or railroads, and to lock and dam the Little Sandy river, were included in the charter.

I think, therefore, that the Kentucky Im-

provement Company was a railroad company within the purview of the statute, and liable to the tax assessed. There must be judgment for the defendant and for his costs.

[NOTE. A writ of error was then taken by the plaintiff to the supreme court, where the judgment was affirmed in an opinion by Mr. Justice Clifford, who said that, under the enlarged powers conferred by the new statute, the company not only had a right to lay tracks, but could condemn lands and do other acts which clearly showed it to be in fact a railroad company, and, being such, the coupons attached to the bonds were liable to be taxed. Mr. Chief Justice Waite, Mr. Justice Field, and Mr. Justice Harlan dissented on the ground that the construction of the short railway by the improvement company for its own use did not convert it into a railroad company. 100 U. S. 648. See, also, Eastern Ky. R. Co. v. Slack, Case No. 4,253.]